# Court of Appeals
## Tenth Appellate District of Texas

10-25-00174-CV

Olivia J. Mack, as Next Friend of M.Y.M.,
her Natural Daughter and a Minor-age Child,
Appellant

v.

Amber Nicole Martinez,
Appellee

On appeal from the
County Court at Law No. 3 of McLennan County, Texas
Judge J. Patrick Atkins, presiding
Trial Court Cause No. 20240572CV3

JUSTICE SMITH delivered the opinion of the Court.

## MEMORANDUM OPINION

Olivia J. Mack, as next friend of M.Y.M., her natural daughter and a minor-age child, appeals from a summary judgment rendered in favor of Amber Nicole Martinez in Appellant's personal injury suit. Appellant contends the trial court erred by failing to apply California law and by erroneously granting

summary judgment for Appellee when there are at least thirty material fact questions.[1] We affirm.

## BACKGROUND

Appellant's daughter, M.Y.M., attended a science fair for high school students in California. Appellee and her son also attended the event. On the final day of the event, while in a crowded hallway, Appellee and M.Y.M. interacted. They spoke to each other, and, according to M.Y.M., Appellee pointed her finger at M.Y.M., causing M.Y.M. to take three steps backward, where she was blocked by the crowd.

Three months later, Appellant filed suit against Appellee alleging assault, intentional infliction of emotional distress, negligent infliction of emotional distress, wrongful confinement, "defamation at common law and California civil section 46-slander, false and unprivileged publication," and "defamation at common law and California civil section 46-slander, false and unprivileged publication per quod." Appellee filed a motion to dismiss the suit pursuant to the Texas Citizens Participation Act, which was denied, and a

---

[1] On pages xxxiv through xxxvii of Appellant's Second Amended Brief, are ten paragraphs under the heading "Issues Presented." These un-numbered paragraphs are not in any logical order. The "Argument" portion of the brief begins on page twenty-six and continues, without subheadings, through page fifty-eight. Presenting as an unorganized stream of consciousness riddled with conjecture, the topics follow no particular order and are only loosely but not completely based on the "Issues Presented." We will do our best to discern the meaning of the arguments, as required by the rules and the Texas Supreme Court. *See* TEX. R. APP. P. 38.9; *Horton v. Stovall*, 591 S.W.3d 567, 569 (Tex. 2019) (per curiam).

traditional motion for summary judgment, which was granted. After her motion for new trial was denied, Appellant filed her notice of appeal.

## STANDARD OF REVIEW

We review the trial court's decision to grant summary judgment de novo. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021). The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact, and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(h)(2); *Eagle Oil & Gas Co.*, 619 S.W.3d at 705. A defendant who conclusively negates at least one of the essential elements of the cause of action or conclusively establishes an affirmative defense is entitled to summary judgment. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). Once the movant establishes its right to summary judgment as a matter of law, the burden shifts to the nonmovant to present evidence sufficient to raise a genuine issue of material fact, thereby precluding summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018).

We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference in favor of the nonmovant and resolve any doubts in her favor. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181

(Tex. 2019). We credit evidence favorable to the nonmovant if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 279 (Tex. 2017); *see also Tex. Dep't of Pub. Safety v. Tex. Tribune*, 731 S.W.3d 772, 792 (Tex. App. [15th Dist.] 2026, no pet.) (clarifying that all evidence favorable to the nonmovant will be taken as true if reasonable jurors could do so in deciding whether there is a disputed issue of material fact). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam).

## CHOICE OF LAW

Appellant contends the trial court erred in not applying California law to all six of her causes of action. She relies on Sections 146 and 149 of the Restatement (Second) of Conflict of Laws. She argues that California law should be applied because deterrence of the tortfeasor is the primary objective of California law. She asserts that "forum law never controls in cases of an intentional tort unless the parties consent," and she has not consented to the application of Texas law to the motion for summary judgment. She contends that "the proposition that an intentional tort injury that was suffered in another state and the conduct giving rise to that injury occurred in another

state, that somehow Texas law would be appropriate is absurd and defies the Second Restatement of Conflicts."

**Applicable Law**

Which state's law governs an issue is a question of law for the court to decide. *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 204 (Tex. 2000). Section 71.031 of the Texas Civil Practice and Remedies Code addresses claims for injury or death caused by a wrongful act, neglect, or default that took place in a foreign state or country. TEX. CIV. PRAC. & REM. CODE ANN. § 71.031(a). Subsection (c) provides, "[t]he court shall apply the rules of substantive law that are appropriate under the facts of the case." *Id*. § 71.031(c). Texas courts use the "most significant relationship" test found in the Restatement (Second) of Conflict of Laws to decide choice-of-law issues. *Wagner*, 18 S.W.3d at 205. Under that test, a court considers which state's law has the most significant relationship "to the particular substantive issue to be resolved." *Id*. Section 71.031(c) has been construed to incorporate the Restatement's most-significant relationship test. *See Stevenson v. Ford Motor Co.*, 608 S.W.3d 109, 121-22 (Tex. App.—Dallas 2020, no pet.).

Section 6(2) of the Restatement requires us to consider the relative interests of the respective states in having their laws applied to the case. That section sets out general factors relevant to the choice-of-law question, which

include the needs of the interstate system, the relevant policies of the forum and other interested states, the protection of justified expectations, certainty, predictability, and uniformity of result, and ease in determining and applying the applicable law. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2) (1971); *Wagner*, 18 S.W.3d at 205.

In a torts case, where the injury and tortious behavior occurred, the domicile of the parties, and the place where the relationship between the parties is centered are all relevant factors to consider. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2) (1971); *Torrington Co. v. Stutzman*. 46 S.W.3d 829, 848 (Tex. 2000); *Wagner*, 18 S.W.3d at 205 n.1. In such instances, the Restatement's "most significant relationship test" includes a presumption in favor of applying the law of the place where the injury occurred unless, under the principles stated in Section 6, another state has a more significant relationship to the occurrence and the parties, in which event the law of the other state will be applied. RESTATEMENT § 146. In the context of tort cases, the factors of the justified expectations of the parties and of certainty, predictability, and uniformity of result are of lesser importance. *See Vanderbilt Mortg. & Fin., Inc. v. Posey*, 146 S.W.3d 302, 314 (Tex. App.— Texarkana 2004, no pet.).

The Restatement generally encourages courts to rely less on the Section 6 general principles than on the application of the factors found in the sections addressed to the specific types of claims. *Alarcon v. Velazquez*, 552 S.W.3d 354, 361 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). The contacts relevant to those sections are to be evaluated according to their relative importance with respect to the particular issue. *Id.* at 362. The number of contacts with a state are not determinative; rather, we evaluate them in light of the state policies underlying the particular substantive issue. *Id.*

The primary purpose of awarding compensatory damages in civil actions is not to punish the defendant, but to fairly compensate the injured plaintiff. *Torrington Co.*, 46 S.W.3d at 848. A state's compensatory damage law balances the need to compensate the plaintiff against the goal of protecting resident defendants from undue liability and excessive litigation. *Id.* at 849. The most important contacts in determining which state's law governs compensatory damages will usually be the ones with the most direct interest in the plaintiff's monetary recovery and/or the most direct in protecting the defendant against financial hardship. *Id.*

**Discussion**

The site of the alleged injury, California, is a factor to consider in determining which state's law applies. *See* RESTATEMENT § 145(2). However,

in applying the most significant relationship test, and considering other pertinent factors, we agree with the trial court that Texas law applies here. Appellant, M.Y.M., Appellee, and Linda Morris, a co-director of the Central Texas Science and Engineering Fair and the only named witness to the incident at issue, are all Texas residents. At the time of the incident, they were in California attending an international science fair. M.Y.M. and Appellee's son, D.M., were selected to attend the fair by the directors of the Central Texas Science and Engineering Fair. Texas has a strong policy interest in protecting its residents to allow for recovery of adequate compensation for torts committed against them and seeing its compensatory damages law applied. *See Torrington, Co.*, 46 S.W.3d at 849. Further, Texas has a significant interest in protecting resident defendants. *Id*. at 850.

The words and actions of Appellee were centered on M.Y.M.'s words, actions and inactions regarding Appellee's son, D.M. Other than the parties' presence in the Los Angeles Convention Center, none of Appellant's allegations involve the venue. The fact that the organizers of the science fair chose to have their event in California bears no relation to the incident between the parties. Therefore, California does not have a significant interest in the interactions between the parties.

Furthermore, while Appellant's causes of action are based on events occurring on May 17, 2024 in California, in her petition she relies on events and actions occurring in Texas prior to the trip to California to support those allegations. As summary judgment evidence, Appellee attached her affidavit in which she explained that the relevant interactions between M.Y.M, Appellee, and D.M. started in February 2024. She further testified that, before the California trip, M.Y.M. and D.M. had "issues" at school. Appellee also attached an email she sent to the principal of China Spring High School a month before the trip to California. In the email, she indicated there was some conflict between M.Y.M. and D.M. Thus, the parties' relationship is centered on activities at China Spring High School in China Spring, Texas. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(d).

Although the alleged injury occurred in California, the place of injury bears little relation to the occurrence and parties. *See Torrington*. 46 S.W.3d at 849-50. In that circumstance, the site of the injury or where the tortious behavior occurred is not an important contact. *See id*. Texas has a more significant relationship to the occurrence and the parties. We conclude that Appellee proved as a matter of law that Texas law applies in this case. *Eagle Oil & Gas Co.*, 619 S.W.3d at 705.

Appellant presented M.Y.M.'s thirty-one-page affidavit together with its fifteen exhibits in support of her response to Appellee's motion for summary judgment. In M.Y.M.'s affidavit, she explained that she and D.M. both ran for National Honor Society president at their school and, while they were in California, they learned that M.Y.M. won the election. She explained that for three years she helped D.M. significantly and described their interactions involving their high school science fair club, their classes together, student council, and attendance at the state science fair.

The exhibits attached to M.Y.M.'s affidavit included: text messages between Appellant and M.Y.M regarding the incident at the science fair and M.Y.M.'s feelings; a text message from one of M.Y.M.'s friends regarding M.Y.M.'s feelings; group texts regarding registration for and attendance at a March 2024 science fair at Texas A & M University; text messages between M.Y.M. and D.M. about the science club, social activities, and school work; M.Y.M.'s medical records; a table entitled "Documented acts of kindness toward Defendant's family & Defendant's son DM;" copies of Texas Penal Code Sections 36.02 and 43.24; the lyrics of two songs; photos taken at the science fair and the airport in California; photos of Appellee's daughter; screenshots of a McLennan County Community College dual credit history class online assignment dated November and December 2024; certified mail receipt and

tracking history; a copy of the citation served on Appellee; a copy of emails from Appellee to Dr. Rutherford, the school principal, dated April 18, 2024 and May 22, 2024; screen shots showing case information of a case filed by Appellee; a screen shot of an email forwarded to M.Y.M. from Dr. Rutherford regarding the science fair; photos of M.Y.M. engaged in volunteer work; Appellant's affidavit dated December 26, 2024; and the affidavit of David Mack, M.Y.M.'s father, dated December 27, 2024.

M.Y.M.'s affidavit and exhibits reinforce the ongoing relationship between M.Y.M., D.M., and Appellee. The entirety of that relationship exists in Texas. M.Y.M. and Appellee were in contact regarding extracurricular activities in Texas, they attended the science fair in California together for a few days as part of a small contingent from their Texas high school, and then returned to Texas. Appellant's causes of action are based on words and actions of Appellee stemming from the parties' relationship. Even taking all of Appellant's evidence as true, nothing in Appellant's summary judgment evidence indicates a connection between Appellee's words and actions and the state of California. Thus, nothing in Appellant's summary judgment evidence raises a fact question as to whether Texas is the state with the most significant relationship to the issue to be resolved. *See Wagner*, 18 S.W.3d at 205. Appellant did not meet her burden to present sufficient evidence to raise a

genuine issue of material fact precluding summary judgment on the choice of law issue. *See Lujan*, 555 S.W.3d at 84. Accordingly, the trial court did not err in applying Texas law to this case.

## PERJURY

Appellant asserts that the trial court erred in "not striking Appellee's Pleadings and affidavit for aggravated perjury in her sworn affidavit as to when she received notice of Appellant's petition." She further contends that the trial court erred in granting Appellee's motion for summary judgment in light of the aggravated perjury in Appellee's affidavit asserting she "was 'stunned' on August 30, 2024 when she first saw Appellant's allegations."

In her response to Appellee's motion for summary judgment, Appellant objected to Appellee's summary judgment evidence on the basis of "falsity of statements," among other complaints. She argued that the statement that Appellee was stunned on August 30, 2024, inferring that she first received effective service and notice of the suit on August 30, 2024, is a "patent falsehood and perjured statement." Appellant has not provided a record citation showing the trial court ruled on her objection. Although we reviewed the record, we were unable to find a ruling.

Appellant's contention that Appellee's affidavit contains false statements indicating she perjured herself is an objection to a defect of form.

*See Austin v. Countrywide Homes Loans*, 261 S.W.3d 68, 74 (Tex. App.—

Houston [1st Dist.] 2008, pet. denied) (held that failure to object and obtain

ruling for argument that affidavit is "fabricated" results in waiver). A party

objecting to an affidavit based on a defect of form must not only object but also

obtain a ruling on its objection. TEX. R. APP. P. 33.1(a); *Seim v. Allstate Tex.*

*Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018) (per curiam). Because Appellant did

not obtain a ruling on her objection, this complaint is waived.

## CIVIL ASSAULT

Appellant contends the trial court erred in "not finding grounds for

assault." In the "Statement of the Case" section of her brief, Appellant asserts

that "Appellee's actions were so reckless as to the potential of causing bodily

injury that they fall under Texas Penal Code Section 22.01(a)(1)." In the

"Argument" section of her brief, Appellant asserts that Appellee committed a

civil assault with physical gestures, movements invading M.Y.M.'s body space,

and repeated hateful comments directed to M.Y.M. Appellant claims that

M.Y.M. suffered bodily injury including pain and impairment due to the

reckless conduct of Appellee. She argues that:

> [I]n the eyes of a reasonable 14 year old person that
> this conduct on the part of a middle-age adult at such
> a serious event with a large police presence
> demonstrates out of control behavior and underscores
> the reasonable fear of an actual assault that might

occur that would be experienced by a fourteen year (sic) reasonable person under the circumstances.

In her petition, Appellant alleged that Appellee "acted with the intention to cause harmful or offensive contact or intending to place [M.Y.M.] in fear of a harmful or an offensive contact" by shaking her finger directly in M.Y.M.'s face with each word and moving toward M.Y.M. as M.Y.M. backed up. Appellant alleged that Appellee's actions caused M.Y.M. physical pain and mental suffering.

In her motion for summary judgment, Appellee asserted entitlement to summary judgment on Appellant's assault claim because the claim is not viable as a matter of law. In her affidavit, Appellee stated that, at the science fair on May 17, 2024, she discussed the issue of bullying with M.Y.M. and explained to her that her behavior toward D.M. in the prior months made him feel upset. She denied raising her voice, pointing her finger at M.Y.M., or making any physical gestures at her.

In Texas, the elements of civil assault are the same as for criminal assault. *Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012). Section 22.01 of the Texas Penal Code provides that a person commits an assault if the person (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse; (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or (3) intentionally

or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. TEX. PEN. CODE ANN. § 22.01(a).

Appellant cites only to Section 22.01(a)(1). To prove an action for assault by infliction of bodily injury pursuant to Section 22.01(a)(1) the plaintiff must prove the defendant made contact with the plaintiff's person. *See Preble v. Young*, 999 S.W.2d 153, 156-57 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Additionally, to prove an action for assault by offensive contact pursuant to Section 22.01(a)(3) the plaintiff must establish the defendant made physical contact with the plaintiff's person. *City of Watauga v. Gordon*, 434 S.W.3d 586, 589-90 (Tex. 2014). In her affidavit, Appellee explained that she talked to M.Y.M. and denied making physical gestures. Thus, Appellee conclusively negated the element of physical contact, negating applicability of the first and third theories of assault. To the extent Appellant's assault claim is based on Section 22.01(a)(1) and 22.01(a)(3), Appellee met her burden to show entitlement to summary judgment on Appellant's assault claim as a matter of law. *See Fernandez*, 315 S.W.3d at 508.

In M.Y.M.'s affidavit, she did not say Appellee engaged in any physical contact, only that Appellee stood very close to her, getting in her face. Therefore, Appellant did not meet her burden to raise a genuine issue of

material fact as to the element of physical contact necessary for a claim pursuant to the first and third theories of assault. *See Lujan*, 555 S.W.3d at 84.

Although it is not clear that Appellant alleged in her petition or argued on appeal that Appellee committed assault by threat pursuant to Section 22.01(a)(2) that argument also fails. The second theory of assault requires proof that the defendant threatened another with imminent bodily injury. TEX. PENAL CODE ANN. § 22.01(a)(2). The focus in an assault by threat case is on the defendant's words and conduct, and the critical inquiry is whether a reasonable person under the circumstances would consider the words and conduct to be an objective threat of imminent bodily injury. *See Olivas v. State*, 203 S.W.3d 341, 347 (Tex. Crim. App. 2006). The word "imminent" has been defined to mean "near at hand; . . . impending; on the point of happening." *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989) (en banc).

In her affidavit, Appellee stated that she had a discussion with M.Y.M. in which she explained the effect of M.Y.M.'s behavior on D.M. She denied raising her voice or making physical gestures toward M.Y.M. This evidence conclusively negates the element of an intentional or knowing threat required by Section 22.01(a)(2). *See Olivas*, 203 S.W.3d at 347; *Jones v. Shipley*, 508 S.W.3d 766, 770-71 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (held

that act of walking aggressively toward complainant and shaking her finger at him, together with the vague verbal threat to "get" him, does not support a reasonable inference in the mind of a reasonable person that defendant made an objective threat to inflict imminent bodily injury).  To the extent Appellant's assault claim is based on Section 22.01(a)(2), Appellee met her burden to show entitlement to summary judgment on Appellant's assault claim as a mater of law.  *See Fernandez*, 315 S.W.3d at 508.

The burden then shifted to Appellant to raise a genuine issue of material fact.  In her affidavit, M.Y.M. described her interaction with Appellee as follows:

> Amber Martinez then says in a loud voice that makes me turn around, 'Would you want to save a seat for someone who's been ugly to you?' (She says this to me.)
> I turn around, shocked and feeling threatened curiously asking, 'Excuse me?' (I back up a few steps.)
> Amber Martinez says, 'You have been very ugly to D.M.!' (She starts approaching me.)
> Linda Morris begins backing away to the side away from Amber.
> Confused, I ask, 'What do you mean?' (Reeling backward, I keep backing up until I can't anymore because of other people in line behind me.) . . . .
> Amber Martinez says, 'Don't say, 'What do you mean? You know.' (To the effect of, 'You know what you did.') (She approaches until she stands right in front of me, very close, out of control, getting in my face and holding eye contact.)
> I say, 'I have been nothing but sweet to D.M. this whole trip!'

Amber Martinez shouts, 'NO! You're only nice to D.M. when Ms. Linda is around! Only when she is around! You know that.' (She stays close to me in my face, with a horrible demeaning expression and eye contact, shaking her finger in my face.)

I reply, 'I am nothing but nice to D.M. We talk all the time. I help him at school…' (I get cut off by Amber.)

Amber Martinez says, 'NO, you do not! You never help D.M. at school! He does everything himself. He is completely independent!' (She points and shakes her finger with each word she says, and continues to step forward as she speaks. I was very afraid that she was going to become physically violent towards me, because her actions towards me were clearly with the intent of putting me in fear of imminent danger.)

I'm forced to take 3 steps back away from Amber.

Amber Martinez says, 'I don't know what planet you're on! Or what's going on in that little head of yours!' (She continues and finally backs away from me, moving towards Linda.)

I'm completely shocked, and I don't get a chance to respond.

The assault by threat statute is conduct-oriented, focusing on the act of making a threat. *See Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008). Taking as true the statements in M.Y.M.'s affidavit, she described how Appellee spoke to her, Appellee's conduct while speaking to her, and how Appellee's words and conduct made her feel. Nothing in M.Y.M.'s description of the encounter can be interpreted as a threat of imminent bodily injury by Appellee. Further, we have reviewed all of Appellant's summary judgment evidence and we determine that Appellant has failed to raise a genuine issue of material fact regarding the element of an imminent threat of bodily harm

required by Section 22.01(a)(2). *See Moore v. City of Wylie*, 319 S.W.3d 778, 782-83 (Tex. App.—El Paso 2010, no pet.) (held that deposition testimony wherein plaintiff stated he was terrified during the confrontation with defendant did not raise a fact issue on the elements of intentionally or knowingly threatening plaintiff with imminent bodily harm). Accordingly, the trial court did not err in granting summary judgment in favor of Appellee on Appellant's civil assault cause of action.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In the argument section of her brief, noting that M.Y.M. was fourteen years old at the time, Appellant asserts that Appellee's conduct of "getting up in the face of M.Y.M., while uttering hateful statements and forcing M.Y.M. to back up three steps into the back of the people behind her," constitutes outrageous conduct. Appellant asserts that Appellee knew M.Y.M. was peculiarly susceptible to emotional distress due to her age and because she had been disqualified from competing at the science fair and her parents had returned to Texas. We construe this argument to be an assertion that the trial court erred in granting summary judgment in favor of Appellee on Appellant's causes of action for intentional infliction of emotional distress and negligent infliction of emotional distress.

In her petition, Appellant alleged that Appellee committed intentional infliction of emotional distress by the same conduct as alleged in her assault cause of action. She asserted that Appellee engaged in extreme and outrageous conduct with wanton and reckless disregard of the probability of causing M.Y.M. to suffer severe emotional distress from being assaulted. She argued that the alleged assault, and Appellee's conduct during the remainder of that day, constituted the actual and proximate cause of M.Y.M.'s severe emotional distress. Appellant also asserted that Appellee's conduct was outrageous because she abused a position of apparent authority, her position in the Texas Office of the Attorney General, and as "an adult participant parent" representing the Waco area at the science fair.

In her motion for summary judgment, Appellee asserted that she is entitled to summary judgment on Appellant's claims of intentional infliction of emotional distress and negligent infliction of emotional distress because those claims are not viable as a matter of law. Specifically, she argued that the facts asserted in Appellant's pleadings do not rise to the level of extreme and outrageous conduct as required to prevail on a claim for intentional infliction of emotional distress. Further, she contended that Texas does not recognize a cause of action for negligent infliction of emotional distress.

To recover for intentional infliction of emotional distress, a plaintiff must prove that: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998). The element of extreme and outrageous conduct should be found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993).

Whether a defendant's conduct is extreme and outrageous, as required for a claim of intentional infliction of emotional distress, is a question of law. *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001). Conduct that is merely insensitive or rude is not extreme and outrageous, nor are mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006). Callous, meddlesome, mean-spirited, officious, overbearing, and vindictive actions and words do not rise to the level required to prove intentional infliction of emotional distress. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 817-18 (Tex. 2005).

Appellant complains of Appellee's question, "Would you want to save a seat for someone who's been ugly to you?" She also complains of Appellee's statements:

> 'You have been very ugly to D.M.!'
> 'Don't say, 'What do you mean.' You know.'
> 'NO! You're only nice to D.M. when Ms. Linda is around! Only when she is around! You know that.'
> 'NO, you do not! You never help D.M. at school! He does everything himself. He is completely independent!'
> 'I don't know what planet you're on! Or what's going on in that little head of yours!'
> 'I know, I've been trying all week.' (Spoken to Linda Morris after Morris said, 'let's calm down.')
> 'I'm not letting him. Even if he gets a scholarship to Caltech, I'm just not letting him go! It's so unsafe here!' (Spoken to the group in an elevator at the airport, regarding her son.)

Appellee never made threats and never used vulgar or obscene language. Appellee stated in her affidavit that she did not raise her voice or use physical gestures. The focus of her criticism was her perception of M.Y.M.'s treatment of her son. With the exception of the complained-of statement at the airport, the incident was a brief, one-time conversation. We characterize Appellee's comments as rude and insensitive, possibly meddlesome and mean-spirited. *See Suberu*, 216 S.W.3d at 796; *Jackson*, 157 S.W.3d at 817-18; *Tiller v. McLure*, 121 S.W.3d 709, 714 (Tex. 2003) (per curiam) (phone calls in which defendant was consistently rude, demanding, curt and insensitive did not rise

to the level of extreme and outrageous conduct). As a matter of law, Appellee's conduct was not extreme and outrageous as required for a claim of intentional infliction of emotional distress. *See Twyman*, 855 S.W.2d at 621.

Because the burden shifted to Appellant to raise a fact issue, we review Appellant's summary judgment evidence. *See Lujan*, 555 S.W.3d at 84. In her affidavit, M.Y.M. stated that Appellee's statements shocked her and made her feel threatened, causing her to back away from Appellee. She said Appellee stood very close to her, was out of control, had a "horrible demeaning expression" on her face, and shook her finger in M.Y.M.'s face. M.Y.M. was "very afraid" that Appellee was going to become physically violent. M.Y.M. believed Appellee intended to put M.Y.M. in fear of imminent danger. Due to the encounter, M.Y.M.'s heart was pounding, she was flushed, and she experienced a stomach ache and other physical responses. Even taking M.Y.M.'s testimony as true, it is largely directed at her own feelings and reactions. Her characterization of Appellee's demeanor and actions does not describe extreme and outrageous conduct. *See Jackson*, 157 S.W.3d at 817-18. Neither M.Y.M.'s affidavit nor the remainder of Appellant's summary judgment evidence raises a fact issue on the element of extreme and outrageous conduct by Appellee. Therefore, Appellant did not meet her burden

to defeat summary judgment on her claim for intentional infliction of emotional distress. *See Lujan*, 555 S.W.3d at 84.

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Alternatively, Appellant asserted that Appellee committed negligent infliction of emotional distress through her actions on May 17, 2024. Appellant argued that Appellee owed a duty to M.Y.M. to act in a "civil non-assaultive manner" toward the science fair participants. Appellant contended that Appellee breached this duty and M.Y.M. suffered serious mental distress and mental injuries as a result of that breach. Texas does not recognize a cause of action for negligent infliction of emotional distress. *Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex. 1993) (op. on reh'g). Accordingly, the trial court did not err in granting summary judgment in favor of Appellee on Appellant's negligent infliction of emotional distress cause of action.

### WRONGFUL CONFINEMENT

In her brief, Appellant contends M.Y.M. was "forced to back up or be trapped by the crowd behind her." She further claims M.Y.M. "experienced false imprisonment for fifteen hours." Although we find no discernable argument in the brief asserting that Appellant raised a fact question regarding her wrongful confinement cause of action, we will infer such an argument.

In her petition, Appellant asserted, based on the same facts as the assault cause of action, that Appellee intentionally deprived M.Y.M. of freedom of movement by use of force, threats of force, menace, and unreasonable duress. This threat caused M.Y.M. to retreat backward three steps until her back was blocked by the line behind her. She further alleged "the menace and unreasonable duress continued throughout the day at the airport and during the flight back to DFW." She alleged that Appellee "effectively directed cell phones to be put away," depriving M.Y.M. of the ability to request help.

In her motion for summary judgment, Appellee asserted entitlement to summary judgment on Appellant's cause of action for wrongful confinement, contending the claim is not viable as a matter of law. She argued that Appellant failed to allege any threats by Appellee and that Appellee did not engage in any conduct constituting wrongful detention.

We interpret Appellant's claim of wrongful confinement to be a cause of action for false imprisonment, the elements of which are willful detention, without consent, and without authority of law. *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985) (per curiam). A detention can be accomplished by violence, by threats, or by any other means that restrains a person from moving from one place to another. *Martinez v. Goodyear Tire & Rubber Co.*, 651 S.W.2d 18, 20 (Tex. App.—San Antonio 1983, no writ). Where

a detention by threat is alleged, the plaintiff must demonstrate that the threat was such as would inspire in the threatened person a reasonable fear of injury to her person, reputation, or property. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 645 (Tex. 1995). The threat must be calculated to detain, not just intimidate, the person. *Safeway Stores, Inc. v. Amburn*, 388 S.W.2d 443, 447 (Tex. App.—Fort Worth 1965, no writ).

In her affidavit, Appellee stated that she had a discussion with M.Y.M. regarding M.Y.M.'s behavior toward D.M. She denied raising her voice, pointing her finger, or making any physical gestures. This evidence shows as a matter of law that Appellee did not detain M.Y.M. and that Appellee met her burden to show entitlement to summary judgment on the claim of false imprisonment. *See Fernandez*, 315 S.W.3d at 508; *Castillo*, 693 S.W.2d at 375.

The burden then shifted to Appellant to raise a fact question. Appellant bases her false imprisonment claim on Appellee's words, which as explained above, did not include any verbal threats, and her close physical proximity to M.Y.M., together with the act of shaking her finger in her face. Attached to M.Y.M.'s affidavit are three photos taken at the science fair showing long lines in the hallway. It appears there are two lines, with several feet of empty walkway between the lines. The photos do not support M.Y.M.'s contention that she could not back up anymore because of other people in line. Even

taking as true M.Y.M.'s statements that she felt threatened, Appellee had a "horrible demeaning expression," and M.Y.M. was afraid Appellee would become physically violent, this evidence indicates M.Y.M.'s state of mind. At most, M.Y.M.'s testimony shows she was intimidated. Appellant's evidence does not show a reasonable fear of injury. *See Johnson*, 891 S.W.2d at 645.

Appellant argues that M.Y.M. "actually experienced false imprisonment for fifteen hours." This argument is not supported by M.Y.M.'s affidavit testimony. After the incident between M.Y.M. and Appellee, M.Y.M. went into the auditorium for the final science fair event, where she did not sit with Appellee. Then she and Morris went to their hotel, and then to the airport. Appellee and her family drove separately. At the airport, M.Y.M. tried to keep her distance from Appellee. After an uncomfortable elevator ride and group lunch, M.Y.M. sat next to D.M. on the plane, feeling "completely trapped." Upon arriving in Texas, Appellee and her family drove back to Waco separately from M.Y.M. and Morris. None of Appellee's actions after leaving the science fair, as described by M.Y.M., constitute a threat to detain M.Y.M. *See Amburn*, 388 S.W.2d at 447. We conclude that Appellant did not raise a genuine issue of material fact regarding the element of detention. *See Lujan*, 555 S.W.3d at 84. Appellant did not meet her burden to defeat summary judgment on her

claim for wrongful confinement, which we construe as a claim for false imprisonment. *See id*.

## DEFAMATION

In her brief, regarding her causes of action for slander, Appellant contends the trial court was in error in questioning whether the statements made by Appellee could be mere opinion and therefore not actionable slander. She asserts that M.Y.M.'s reputation was "irrevocably trashed and tarnished" by Appellee's actions. She contends that Linda Morris's excited utterances, explanations, and excuses show that Appellee's conduct and statements were outside the conduct normally tolerated in a civilized society. Appellant asserts that the falsity of Appellee's statements that M.Y.M. never helped her son is documented by evidence she presented that D.M. plagiarized M.Y.M.'s schoolwork. She argues that this evidence shows D.M. was accustomed to borrowing work from M.Y.M. and that Appellee was reckless in not recognizing the help M.Y.M. provided for her son. We construe Appellant's contentions to be an assertion that the trial court erred in granting summary judgment in favor of Appellee on Appellant's causes of action for defamation at common law and slander per quod.

In her petition, based on the same facts as all of her other causes of action, Appellant alleged that Appellee committed defamation at common law

and per quod.[2] She asserted that Appellee's statements, which were overheard by Linda Morris and people nearby, were "patently false and were made with the intent to destroy [M.Y.M.'s] reputation." She also asserted that Appellee made the statements with actual malice, that is, with knowledge of their falsity, or, alternatively, with a reckless disregard for their falsity or serious doubts as to their truth. Appellant asserted that Appellee's statements attacked M.Y.M.'s honesty and diminished her reputation in general, in the science community, and for leadership of the China Springs High School science fair club. She alleged that M.Y.M. has suffered harm to her reputation, shame, mortification, and hurt feelings, and been forced to undergo professional counseling as a result of this incident.

In her motion for summary judgment, regarding Appellant's slander and slander per quod causes of action, Appellee argued that the statements Appellant complains of are not actionable as a matter of law. Therefore, Appellee asserted, she is entitled to summary judgment on Appellant's slander and slander per quod causes of action.

Defamation is a tort, the threshold requirement for which is the publication of a false statement of fact to a third party. *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 623 (Tex. 2018). The fact must be defamatory

---

[2] She also alleged violations of California statutes but, as explained above, California law does not apply in this case.

concerning the plaintiff, and the publisher must make the statement with the requisite degree of fault. *Id.* Slander is a defamatory statement expressed orally. *Id.*

In a defamation case, the threshold question is whether the words used are reasonably capable of a defamatory meaning, which is a question of law for the court. *Id.* at 624; *Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex. 1989). A defamatory statement is one that tends to harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him. *Innovative Block of S. Tex, Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020).

If a statement is not verifiable as false, it is not defamatory. *Tatum*, 554 S.W.3d at 624. Even when a statement is verifiable as false, it does not give rise to liability if the entire context in which it was made discloses that it is merely an opinion masquerading as a fact. *Id.* A statement may be false, abusive, and unpleasant without being defamatory. *Free v. American Home Assur. Co.*, 902 S.W.2d 51, 54 (Tex. App.—Houston [1st Dist.] 1995, no writ). A communication that is merely unflattering, annoying, irksome, or embarrassing, or that hurts only the plaintiff's feelings is not actionable. *Means v. ABCABCO, Inc.*, 315 S.W.3d 209, 214 (Tex. App.—Austin 2010, no

pet.). Criticism alone is not necessarily defamatory. *See Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 855 (Tex. App.—Dallas 2003, no pet).

Texas recognizes the common-law rule that defamation is either per se or per quod. *Tatum*, 554 S.W.3d at 624. Defamation per se occurs when a statement is so obviously detrimental to one's good name that a jury may presume general damages, such as for loss of reputation or for mental anguish. *Id*. The Texas Supreme Court has referred to this type of defamation as "textual defamation" and explained that it occurs when a statement's defamatory meaning arises from the words of the statement itself, without reference to any extrinsic evidence. *Id*. at 626. The Supreme Court has referred to defamation per quod as "extrinsic defamation," that is, defamation that does require reference to extrinsic circumstances. *Id*.

The specific statements Appellant complained of in the defamation section of her petition are as follows:

> 'Would you want to save a seat for someone who's been ugly to you?'
> 'You have been very ugly to D.M.!'
> 'Don't say, What do you mean? You know.'
> 'NO! You're only nice to D.M. when Ms. Linda is around! Only when she is around! You know that.'
> 'NO, you do not! You never help D.M. at school! He does everything himself, he is completely independent!'
> 'I don't know what planet you're on! Or what's going on in that little head of yours!'

Taking as true Appellant's assertion that Appellee made these statements, the statements are merely hyperbole and not defamatory. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 17, 20 (1990); *Backes v. Misko*, 486 S.W.3d 7, 26 (Tex. App.—Dallas 2015, pet. denied) (explaining that rhetorical hyperbole is extravagant exaggeration employed for rhetorical effect). Appellee's assertion that M.Y.M. was ugly to D.M. is figurative, employed as metaphor or hyperbole, and not defamatory. *See Falk & Mayfield L.L.P. v. Molzan*, 974 S.W.2d 821, 824 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). Although the statements may have hurt M.Y.M.'s feelings, embarrassed her, and upset her, the statements are at most Appellee's opinions and not actionable defamatory statements. *See Tatum*, 554 S.W.3d at 624.

We come to the same conclusion when considering the statements in light of the extrinsic circumstances. The statements were made in a public hallway of a convention center in Los Angeles, California while the parties attended a science fair. They were overheard by Linda Morris. According to M.Y.M, Morris asked the parties to calm down. M.Y.M. further stated in her affidavit that, after the event concluded, Morris told M.Y.M. that she thought Appellee's statements were inappropriate and that Morris told Appellee the statements were inappropriate. Morris also commented that "we" need to

make sure that what "we" say is not offensive. Morris went on to explain that Appellee told her "this was about the election and something [M.Y.M.'s] mom said to D.M. last night." M.Y.M. explained to Morris that she and D.M. both ran for president of their National Honor Society chapter and they just found out that M.Y.M. won. The circumstances show that Appellee was upset because her son lost an important election to M.Y.M. Contrary to Appellant's assertion, the extrinsic facts do not reveal a hidden meaning behind Appellee's comments, one intended to relay to Morris that M.Y.M.'s leadership abilities should be questioned. Nothing in the circumstances transforms Appellee's hyperbole into defamation.

Accordingly, the trial court did not err in determining that the complained-of statements are not capable of a defamatory meaning. *Carr*, 776 S.W.2d at 570; *Backes*, 486 S.W.3d at 26; *Falk*, 974 S.W.2d at 824. It follows that the trial court did not err in granting Appellee's motion for summary judgment on the claims for defamation per se and defamation per quod. *See Fernandez*, 315 S.W.3d at 508.

## MOTION FOR NEW TRIAL

In her brief, Appellant appears to contend the trial court erred in denying her motion for new trial and refusing to allow her to conduct discovery and amend her petition. In the trial court, Appellant filed a motion for new trial

and motion to modify, correct, and reform the judgment and motion for reconsideration to permit her to amend her petition and conduct discovery. She reasserted her complaints that she was denied discovery, Appellee perjured herself, Appellee's statements constitute actionable defamation, and Appellant raised issues of material fact. She presented no new evidence for the court's consideration.

The standard of review for a motion to reconsider a prior summary judgment is whether the trial court abused its discretion. *Tex. Petroleum Land Mgmt., LLC v. McMillan*, 641 S.W.3d 831, 850 (Tex. App.—Eastland 2022, no pet.). A trial court does not abuse its discretion unless it acts without reference to guiding rules or principles. *Id.* Where, as here, Appellant cites no additional evidence with her motion to reconsider beyond the evidence available to her when the summary judgment was granted, the trial court does not abuse its discretion in denying the motion. *Id.*

## CONCLUSION

The trial court did not err in applying Texas law or in granting summary judgment in favor of Appellee on Appellant's causes of action for civil assault, intentional infliction of emotional distress, negligent infliction of emotional distress, wrongful confinement, defamation per se, and defamation per quod.

Finally, the trial court did not abuse its discretion in denying Appellant's motion for new trial. We overrule all of Appellant's issues.[3]

We affirm the trial court's judgment.

STEVE SMITH
Justice

OPINION DELIVERED and FILED: August 13, 2026

Before Chief Justice Johnson,
      Justice Smith, and
      Justice Harris
Affirm
CV06



---

[3] Appellant asserted numerous arguments that we need not address including: whether M.Y.M.'s age in conjunction with Morris's age created a fact issue; whether the question of a minor's right to bring a lawsuit impacted the trial court's ruling; whether the trial court erred in denying her requests to engage in discovery and present oral testimony; whether Appellee's TCPA motion included an admission that Appellee made defamatory and outrageous statements; whether there are fact issues regarding barratry, bribery, public corruption, D.M.'s transfer to a different school, or M.Y.M.'s injuries; whether there is a fact issue regarding whether M.Y.M. is a liar who engaged in bullying, whether she turned in her forms for the event, and whether she claimed co-ownership of D.M.'s project; whether there is a fact issue regarding whether Appellee fabricated evidence, sent libelous emails to the high school principal, or made statements with malice; whether there is a fact issue regarding any police intervention at the science fair; and all allegations of stalking and other criminal behavior by D.M. and substance abuse by Appellee. *See* TEX. R. APP. P. 47.1.